BOWLES, Adm'r for Office of Price Administration, v. BEARD et al.

Civil Action No. 324.

District Court, S. D. Georgia,
Savannah Division.

May 28, 1945.

S. F. Memory, Jr., and Bernard M. Nelson, both of Savannah, Ga., for plaintiff.

R. W. McDuffee, of Savannah, Ga., for M. L. Beard and Mrs. Bessie Beard.

W. Spencer Connerat, of Savannah, Ga., for Atlantic Savings & Trust Co.

LOVETT, District Judge.

This action was brought by the Administrator pursuant to section 205(a) of the Emergency Price Control Act [1] to restrain further violation of that Act by the defendants. Jurisdiction is conferred upon this court by section 205(c). [2]

On August 20, 1942, the defendant Atlantic Savings & Trust Company, as agent for T. C. Farmer, owner of the premises in question located at 324 East 39th Street in Savannah, Georgia, registered the upper floor as an unfurnished apartment with six rooms as required by the rent regulations of the Office of Price Administration. The registration stated that the rent received on the maximum rental date was $25.90 per month. The defendant Trust Company has continually up to and including the present received exactly the same rent ($25.90 per month) in full compliance with all laws and regulations of the O.P.A.

On September 15, 1940, defendant M. L. Beard rented this apartment unfurnished for $25.90 per month from the defendant Trust Company and placed his own furniture in it. On August 16, 1943, Beard subrented the apartment to Mrs. Juanita Seals as a furnished apartment, he allowing his

[1] 50 U.S.C.A.Appendix, § 925(a): "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act (section 904 of this Appendix), he may make application to the appropriate court for an order enjoining such acts or practices * * *."

[2] 50 U.S.C.A.Appendix, § 925(c): "The district courts shall have jurisdiction of criminal proceedings * * * and, *concurrently with State and Territorial courts, of all other proceedings under section 205 of this Act.*" (Emphasis added.)

furniture to remain in it, at a monthly rental of $65.

On January 1, 1944, the Atlantic Savings & Trust Company filed with the Area Rent Director a report of change in tenancy, certifying that as of that date the tenancy was changed from Beard to his mother, Mrs. Bessie Beard. From January 1, 1944, through February, 1945, Beard continued to collect $65 monthly from Mrs. Seals. At the time of each collection he presented Mrs. Seals with his own receipt for $40 for his furniture and also with a receipt purported to be signed by his mother, Mrs. Bessie Beard, for $25.90 for rent on the apartment, though only $65.00 total was paid by Mrs. Seals.

On March 5, 1945, the Atlantic Savings & Trust Company filed with the Area Rent Director another report of change in tenancy certifying that as of that date the tenancy was changed from Mrs. Bessie Beard to Mrs. Jaunita Seals. For the months of March, April and May, 1945, Mrs. Seals has paid the rent of $25.90 direct to the bank and the $40 to Beard for the furniture. The president of the Trust Company testified neither M. L. Beard nor Mrs. Bessie Beard are at this time contractually liable to the Trust Company for any rent. They have been released. No one contradicts him.

On several occasions during the tenancy periods of M. L. Beard and Mrs. Bessie Beard they were served with notice by the Rent Director that this dwelling unit should be registered as a furnished apartment.

On March 10, 1945, the Area Rent Director, still considering this a furnished apartment, issued his order decreasing the maximum rent from $65 to $47.50 per month. The order was made retroactive to October 1, 1943, and refunds of all amounts in excess of $47.50 per month collected since that date were ordered within 30 days. No refunds have been made by any of the defendants, and the rental charges of $25.90 plus $40 have continued.

This action is to enjoin the defendants, (1) from renting any dwelling unit in the Savannah Defense Rental Area at a rental higher than that fixed by the Area Rent Director, (2) from decreasing the furniture and equipment supplied with the upper apartment at 324 East 39th Street in Savannah until a petition to decrease has been filed and allowed and (3) from evicting the tenants from that apartment without first complying with the provisions of the rent regulations relating to the eviction of tenants.

It is the position of the Atlantic Savings & Trust Company that it has never violated or attempted to violate any of the regulations of the Office of Price Administration nor any of the laws under which such regulations have been made and that it has in all respects attempted to cooperate with the Office of Price Administration. On the hearing the Trust Company showed that it had never been requested to decrease the amount of rent ($25.90) which it had collected since the original registration, that it had not been given an opportunity to discuss the matter with the Area Rent Director, and that the first notice of any proceedings in respect to a decrease in rent was the service of the complaint and the order of the court requiring it to appear and show cause why an injunction should not be issued for acts which the Trust Company never committed. The Trust Company complains that such action on the part of the Area Rent Director was done either deliberately or heedlessly and with utter disregard of its rights, that it was made a party without good reason or justification, that such action has reflected upon the good name and reputation of the Atlantic Savings & Trust Company and has caused unnecessary embarrassment to its officers and employees and that the complaint should be dismissed as to this defendant.

It is the contention of defendants M. L. Beard and Mrs. Bessie Beard that this housing accommodation has never been rented as a furnished apartment but that there has always been one landlord renting the housing accommodation and another and separate landlord renting the furniture, that there was no conspiracy to evade the maximum rent regulations but that, on the contrary, the Office of Price Administration is seeking to fix and control the rental of furniture and thus extend its powers to that over which it has no jurisdiction.

If the manipulations of defendants Beard are not found to be in violation of the statute or regulations, then it can be said that they have done nothing unlawful but have successfully avoided the law. If, however, they have evaded the duties imposed by law upon them as landlords, they are guilty of a violation and relief against them may be obtained.

The plaintiff's case is based principally upon sections 9, 13 and 4(j) of the Rent

Regulation for Housing: Section 9; "The maximum rents and other requirements provided in this regulation shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the *transfer of a lease* of housing accommodations." 10 F.R. 330. (Emphasis added). Section 13 (6): " 'Housing accommodation' means any * * * real or personal property rented or offered for rent for living or dwelling purposes, together with all * * * furniture * * * connected with the use or occupancy of such property." For similar provision see Emergency Price Control Act, section 302(f), 50 U.S.C.A.Appendix § 942(f).

Section 4(j) provides that "within 30 days after the accommodations are first rented fully furnished, the landlord shall register them as a furnished unit."

It is the plaintiff's position that, although the lease for the unfurnished apartment is at the present time in Mrs. Seals' name, the true landlord is not the Atlantic Savings & Trust Company, but is Beard, and that both Beard and the Trust Company should be restrained from collecting any amount of rent greater than that set out in the Area Rent Director's order of March 10, 1945.

Plaintiff specifically contends that when M. L. Beard, on August 16, 1943, sub-let the apartment and at the same time rented his furniture to Mrs. Juanita Seals, he changed the unfurnished accommodation to a fully furnished unit of which he was the landlord, that as a furnished accommodation the rental was subject to the rent regulation for housing and that Beard's failure to register the same within 30 days was a violation of his legal obligation under the rent regulation.

In support of its position plaintiff submits the Administrator's interpretation of section 13(a) (6), supra, of the regulation defining housing accommodations. The interpretation deals with the extent to which renting of furniture is subject to rent regulation where furniture and the balance of the housing accommodations are separately owned.

Comments on Interpretation 1(a)–V, O.P.A. Service, p. 200:875: " * * * if the tenant deals with one person (for example, the landlord, the owner of the furniture, or their agent) in renting the accommodations and the furniture, the furniture under most circumstances is part of the accommodations and the rent therefor is subject to the Regulation. A typical case is where the landlord negotiates with the tenant, or in some manner represents the owner of the furniture. The result will be the same where the owner of the furniture conducts the negotiations with reference to the renting of the accommodations as well as the furniture. "Where furnished accommodations are sub-let by a tenant who owns the furniture) there is no separate ownership since the tenant owns both the furniture and the term created by his rental agreement with the landlord. That is, the sub-tenant occupies by virtue of rights given him by the tenant, not by the landlord)."

It is my inclination to agree with this last contention of the plaintiff which is supported by the Administrator. I feel that during the period in 1943 while Beard was the owner of both the term and the furniture, this housing accommodation was a furnished unit and Beard's failure to register it as such was a violation of the law. Cf. Womack v. Bowles, Em.App. 1944, 146 F.2d 497. However, the petition in the instant case asks for no retroactive relief. Therefore, we are not concerned with violations that may have occurred in 1943.

The same is applicable for the period of January 1, 1944, to March 5, 1945, during which time the lease was at least nominally in Mrs. Beard's name. By her own testimony her son, who owned and rented the furniture, continued to handle the lease as her agent. According to the Administrator's interpretation, supra, the furniture under these circumstances, as well as when Beard himself held the lease, would be "connected with the use or occupancy of such property", the entire unit as furnished would be subject to the rent regulation, and the failure of Mrs. Beard to register the furnished apartment or to have it registered by her son as agent was a violation of the regulation. Cf. Bowles v. Lewis, D.C.,S.D., January 10, 1945, 61 F.Supp. 185, and for gross example of bad faith, collusion, etc., cf. Taylor v. Bowles, 9 Cir., 1945, 147 F.2d 824. Again, however, we are not here concerned with violations that may have occurred in the past. The plaintiff's petition only asks for injunctive relief for the future.

 Viewing relief prospectively, and considering therefore only the present relationships of the several tenants to the landlord Trust Company, the controlling

question for decision is whether Beard has transferred his lease to Mrs. Seals, or whether the parties are acting in concert to evade the law. The positive and uncontroverted testimony of the president of the Trust Company is that both Beard and his mother have been released from all contractual obligation to the Trust Company, that neither of them is longer its tenant, that since March 5, 1945, Mrs. Seals had been accepted by the Trust Company as the tenant and that she pays the rent direct to the Trust Company, Beard and his mother having no control over it. True she pays rent for the furniture also to Beard. But I do not regard that fact as conclusive in determining whether the furniture is "connected with the use or occupancy of" the rented premises. Certainly the Trust Company is not forbidden by the Emergency Price Control Act to release one tenant and substitute another without the transfer of the lease. The right to contract freely is a valuable right protected by the Constitution, and it should not be lightly determined that Congress intended to impose a restraint on the right to contract unless the language of the law is plain and clear to that effect. In this case, Beard really had no lease for a definite term. According to the testimony after Savannah was declared a defense housing area he was merely considered and treated as a tenant at will. He made no effort to transfer any lease, written or verbal, to Mrs. Seals. As already indicated, she was his tenant for a period of time in 1943, and during that period the furniture was connected with the use and occupancy of the property. Perhaps that was true also when Beard attempted to have his mother substituted as a tenant of the Trust Company and the landlord of Mrs. Seals. At least there was unitary control over both the apartment and the furniture during those periods of time. That is no longer true, however. Mrs. Seals is now at liberty to place her own furniture in the apartment or rent furniture for it from another, in either case requiring Beard to remove his furniture, and thus relieve herself from any further obligation to pay him rental therefor. She is no longer his tenant of the apartment; she is the tenant of the Trust Company. The fact that she rents the furniture from a third person, who formerly was also a tenant of the rented premises, is insufficient to make the furniture subject to the same control by the same person controlling the apartment. There having been no

formal transfer of the lease, I can not bring myself to believe that there has been any evasion of the law by the old tenant surrendering his term and a new tenant becoming substituted in his place. Nor am I able to find that there has been any concert of action or conspiracy or collusion between the Trust Company on the one hand and the Beards or Mrs. Seals on the other.

Mrs. Seals has not been made a party to this case, and though the defendants M. L. Beard and his mother moved at the conclusion of the oral testimony to make her a party that motion has been denied because not seasonably made. In the absence of Mrs. Seals, as well as for other reasons, I do not attempt in this opinion to fix or determine her rights to recover any excessive rentals from Beard. It was stated on the hearing that it was her purpose to institute an action to recover rentals in excess of the amount fixed by the Area Rent Director for the furnished apartment. That action may be instituted in the State courts which have concurrent jurisdiction with this court. Whatever the forum, no effort should be made here to pre-determine the rights of the parties.

It has been suggested in behalf of the Administrator that at this late day I should direct M. L. Beard to file a registration of the furnished apartment because he was the true landlord of Mrs. Seals for the months of October, November and December, 1943. I am of the opinion he should have filed this registration statement. I do not see how filing it at this late day will be of any practical benefit to any of the parties to this case. The Administrator is at liberty to proceed otherwise against Beard for his failure to file a registration within 30 days of the first renting.

It has also been suggested that even at this time the Trust Company and Beard should be looked upon as joint landlords of Mrs. Seals, and that Beard should be enjoined from collecting any further rentals from Mrs. Seals for his furniture or for any other purpose until he has complied with maximum price regulations No. 139 and No. 165 under the Emergency Price Control Act. There are two reasons why I think this relief should not be granted. Beard and the Trust Company are not joint landlords of Mrs. Seals. One is her landlord as to the apartment; the other as to the furniture, if one who rents furniture to another can properly be called a landlord.

And the price regulations mentioned were not pleaded in the Administrator's bill of complaint, and the relief now suggested as appropriate was not asked for in his original complaint. It is conceded that in this proceeding I could not properly enjoin Beard from the violation of price regulations; and therefore I should not attempt to do obliquely that which can not be done directly.

With full recognition that the courts share the responsibility along with the administrator of the "war against inflation," the facts presented here do not rise to that level which requires the exercise of the court's discretion in favor of the issuance of an injunction to operate only in futuro. The court is not bound to issue an injunction where the violations have ceased before the hearing. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754; Bowles v. Huff, 9 Cir., 146 F.2d 428. I am quite convinced that the Trust Company and Mrs. Seals are acting in entire good faith. I do not see that either of them has consciously violated any law or regulation up to this time. Mrs. Beard has entirely disappeared as an actor from the scene of controversy. Beard remains only because he holds title to the furniture in the demised premises and collects the monthly rental therefor. If the administrator is of the view that under these circumstances the furniture is connected with the use and occupancy of the apartment rented, so as to bring it within the power to regulate the monthly rental to be paid for the furniture independently, under Sec. 13 (6) of the rent regulations for housing, he should proceed anew to fix the rental value of the furniture disassociated entirely from the rental of the apartment. This he has not yet done.

In my opinion the relief prayed for should be denied and the petition as a whole should be dismissed.

In addition, the petition as against Mrs. Beard should be dismissed on the ground that any participation on her part in the past in the violation of the Emergency Price Control Act has ceased and, so far as the record before me shows, she was an innocent party to the violation.

The petition against the Trust Company should likewise be dismissed. It has never violated nor attempted to violate either the Act or the Regulations. Upon the government's theory of joint landlords it may not have been improper to join the Trust Company as party defendant, though the cause of action against it could have been more skillfully pleaded, so as to give the Trust Company the exculpation which the administrator now concedes it is entitled to have.

Let a decree be presented on notice.