McBRIDE, Judge.
On June 23, 1949 plaintiff rented from the defendant the dwelling known as 639 South White Street, in the City of New Orleans, under a verbal month-to-month lease, stipulating for a monthly rental of $25; plaintiff remained as tenant and paid all rent until September 23, 1950, on which date he moved from the premises. About four months after the termination of the relationship of landlord and tenant between the parties, the local Area Rent Director handed down an order reducing the monthly rent on the unit from $25 to $15; the order established the latter figure as the maximum or ceiling rent effective as of June 23, 1949, the date of the commencement of plaintiff’s tenancy.
On the strength of the Director’s order the plaintiff claims that he was overcharged $10 each month for the period oif fifteen months he occupied the property, and by this suit he is seeking to recover treble the amount of the aggregate overcharge, plus a reasonable attorney’s fee. The matter reaches us on the appeal of defendant from the judgment rendered below casting him for $450, together with attorney’s fees of 15% thereof.
The record does not disclose whether 639 South White Street had ever been leased to anyone before plaintiff took over the premises as tenant. At any rate, it is shown by the testimony of the attorney and an inspector for the Federal Rent Office that defendant neglected to register the unit for the purpose of having a maximum or ceiling rent established. According to the testimony of the two witnesses from t'he Rent Office, it was incumbent upon defendant, under the provisions of regulations adopted by the Administrator, to register the premises within thirty days after his having rented them. We gather that in the latter part of 1950, subsequent to plaintiff’s removal from the premises, the Rent Office became apprised o:f defendant’s dereliction in making tile registration which culminated in the ceiling rent being fixed at $25 per month by the Rent Director, according to an order dated January 10, 1951. The inspector explained that this order was merely of a temporary nature, was intended to serve in place of the registration which should have been made by the landlord, and specifically stated that the rent fixed therein was “subject to change by subsequent order.”
Nine days later, on January 19, 1951, the Area Rent Director issued a second order, a copy of which is included in the record, and this second order decreased the monthly rent from $25 to $15 per month, and established the latter figure as the maximum rent effective as of June 23, 1949. Not alone that, but the landlord was commanded to refund to the tenant within thirty days all rents collected in excess of $15 per month. This suit is predicated on this second order.
Section 205 of the Housing and Rent Act of 1947, as amended by the act of March 30, 1949, 50 U.S.C.A.Appendix, g 1895, in force throughout the term of the verbal lease, reads:
“Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such *600 payment (or shall be liable to the United States as hereinafter provided), for reasonable attorney’s fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded1, accepted, or received exceed the maximum rent which could lawfully be demanded, accepted, or received, whichever in either case may be the greater amount: Provided, That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. * * * ”
Defendant raises two defenses: (1) that the Rent Director acted illegally in issuing the second order in view of the first order which had been issued only nine days before, and (2) that the tenant had rented two rooms to persons who are named in the answer, and that he collected a large amount, in excess of the rent which he himself paid defendant, from them for the use of the two rooms.
There is no merit to the first defense. The defendant was under the legal duty of making timely registration of his property with the rent office. Bearing in mind defendant’s failure to comply with the Administrator’s regulations, we believe that the purpose of the first order was satisfactorily explained by the inspector. The Area Rent Director after inquiry and deliberation had the right to alter or revise his preliminary or provisional findings, and the notice so stated.
It makes no material difference that the tenant departed from the dwelling unit before the second and final order was is.sued, nor is the validity of the second order lessened because it is retroactive to the inception of the lease. Prior to the advent of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., its predecessor the Emergency Price Control Act of 4942, 50 U.S.C.A.Appendix, § 901 et seq., controlled in oases of this kind, and under the provisions thereof the validity of a Rent Director’s order could be examined and passed upon only by the Emergency Court of Appeals at Washington, D. C., as provided by § 204(d) of the Act. Firm jurisprudence was established by the Emergency Court of Appeals to the effect that where a landlord neglects to file proper registration statements with the Rent Director, that officer was authorized to reduce the rent and make the reductions retroactive to the date of the first renting of the property. Mason v. Woods, Em.App., 172 F.2d 857; Dean v. Woods, Em.App., 169 F.2d 952. The defendant cannot be heard to say that the order is invalid because issued at so late-a date. Defendant’s unfortunate position is due solely to his unmindfulness in the-matter of registering his property in the Rent Office within thirty days after plaintiff became his tenant.
We are seriously concerned with the-second defense, i. e., that plaintiff allowed two roomers to occupy, the premises from whom he received more rent than he paid' defendant for the whole property. On the trial below defendant produced as witnesses the roomers in question and sought to elicit from them evidence concerning their occupancy of the rooms. Plaintiff’s-counsel thereupon objected to the admission of the testimony on the ground that it was immaterial, and the objection was sustained and the testimony excluded.
Defendant’s counsel bitterly complains that the trial judge erred in cutting off his defense whioh he maintains is .an equitable one, and goes to the merits of the controversy. He takes the position that if the plaintiff is to be allowed to recover multiple damages under the federal act notwithstanding the profit derived' from the tolerated subleasing of portions of the premises, such would amount to an. unjust enrichment.
Statutes providing for multiple-damages are not “penal,” but the aggrieved', party does recover punitive liquidated damages as the result of the wrongdoer’s-liability. See Whatley v. Love, La.App., *601 13 So.2d 719. A suit such as this brought by a tenant against his landlord is civil in nature and is remedial oí a private wrong. Schwartz v. Dell’Osso, 42 A.2d 306, 23 N.J.Misc. 151; Geisinger v. Milner Hotels, 240 Mo.App. 25, 202 S.W.2d 142.
There is ■ a paucity of jurisprudence touching the precise point raised by defendant. We are cited to two oases decided by United States District Courts. We failed to discover any other authorities although a careful research of the interesting question propounded has been made.
In Bowles v. Gotterdam, 72 F.Supp. 1022, 1024, passed upon by the U. S. District Court of the Eastern District of Ohio, the landlord when sued by the Price Administrator for treble damages based upon alleged rent overcharges, interposed as a defense the fact that one of the tenants destroyed or removed personal property and permitted other' persons to also ■occupy the premises resulting in damages. The Court held that such a defense could not be raised against the Price Administrator’s suit but observed “It may be possible that such defensive matters might be effectively urged in an action by the tenant, * *
The second of the cited cases, United States v. Brown, 101 F.Supp. 939, was decided by the U. S. District Court for the Eastern District of Pennsylvania. The suit was brought in the name of the United States against a landlord who was alleged to have been guilty of making excessive exactions of rent. One of the defenses was that the tenant collected during two years of his tenancy of the premises the sum of $12 per month from a subtenant for the use of a garage. The Court remarked that it perceived no inequity in requiring the defendant to make restitution of what he had received over the allowable maximum rent for his property, but found that the injustice would lie in any provision that the tenant should derive the advantage of any restitution.
Plaintiff prosecutes this action to remedy a private wrong done him. No one can question the fact that a landlord is dealt with harshly in the matter of excessive exaction of rents. Considering the nature of the demands made upon defendant, we believe that the equities surrounding each of the litigants should be ascertained and considered. The well-defined principle known as the balancing of equities and inconveniences prevailing in several other jurisdictions has some applicability here. Because of the exceptional defense advanced by the landlord, o-ur opinion is that the court below should have admitted the testimony of the two roomers, so that the record might disclose all facts bearing on their subletting and occupancy of parts of the premises. Our feeling is that we cannot conscientiously pass upon this cause without the benefit of the testimony of the roomers, and this being a case where the ends of justice require a remand to the district court for further proceedings, it must be so ordered.
The attorney for plaintiff argues that the defense is one that should have properly been made in the Rent Control Office, and that having failed to exhaust his remedies there, he cannot avail himself of the defense in the instant case. We do not think that because defendant did not bring the matter of the subletting of the premises by the tenant before the Rent Control Office that this militates against his right to raise the point before us.
For the reasons above assigned, the judgment appealed from is reversed, and it is now ordered that' the case, be remanded to the court below for further proceedings according to law not inconsistent with the views hereinabove expressed. Plaintiff-appellee is to pay the co-sts of this appeal, and the assessment of all other costs is to await a final determination of the matter.
Reversed and remanded.